**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SANDRA LAMBERT BROCKINTON** | **CIVIL ACTION** |
| **VERSUS** | **NO:    22-4642** |
| **KILOLO KIJAKAZI, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **SECTION: "M" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g).   The Commissioner denied Plaintiff, Sandra Lambert Brockinton ("Brockinton") claim filed for a period Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

## I.    Background

At the time of the application, Brockinton was fifty-one (51) year old individual weighing 134 pounds who earned a GED and who has past relevant work in sales and stock and maintenance. R. Doc. 9, Tr. 155.   Brockinton filed her application for DIB on March 23, 2020, alleging disability beginning on March 12, 2020.   *Id.* at 155.   Her alleged disability is due to morphea, stoke, brain embolism, partial right-side paralysis, memory issues, cardiomyopathy, hypothyroidism, osteopenia, depression, neck pain disc issues, scoliosis, insomnia, asthma, hernia, spleen issues, and liver issues.   *E.g.*, *id.* at 171.

Brockinton's claim was initially denied on March 2, 2021.   R. Doc. 9, Tr. 104.   Her claim

was also denied on reconsideration on July 13, 2021. *Id.* at 115-16. Brockinton requested a

hearing before an Administrative Law Judge (ALJ). *Id.* at 119. A hearing by telephone took

place on March 9, 2022. *See id.* at 38-74. The ALJ issued an unfavorable decision on May 16,

2022. *Id.* at 8-27.

Brockinton appealed the ALJ's decision to the Appeals Council, which was denied on

September 27, 2022, and therefore became the Commissioner's final decision. *Id.* at. 1-7.

Thereafter, Brockinton filed a complaint contending that the ALJ decision was not based on

substantial evidence. *See* R. Doc. 1.

II.    **The ALJ's Decision**

In her decision, ALJ Anderson found Brockinton met the "insured status requirements of

the Social Security Act through December 31, 2024." R. Doc. 9, Tr. 13 (Finding 1). Brockinton

had also "not engaged in substantial gainful activity since March 12, 2020, the alleged onset date."

*Id.* at 13 (Finding 2). Brockinton suffers from the "severe impairments of degenerative disc

disease of the cervical spine, fibromyalgia, major depressive disorder and generalized anxiety

disorder" which affect her ability to work. *Id.* at 14 (Finding 3).

However, the ALJ found that Brockinton does not have an impairment or combination of

impairments that meets or medically equals the severity criteria of a listed impairment. *Id.* at 14

(Finding 4). She found that Brockinton

> did not meet the requirements of listing 1.15 (Disorders of the skeletal spine
> resulting in compromise of a nerve root) because [Brockinton] lacks sufficient
> evidence of neuroanatomic (radicular) distribution of pain, paresthesia or muscle
> fatigue consistent with compromise of the affected nerve root, along with radicular
> distribution of neurological signs present during physical examination or on
> diagnostic tests.

*Id.* The ALJ found that additional evidence, such as a medical need for a walker or other ambulatory assistance, would be necessary to meet the requirements of listing 1.15. *Id.* at 15. The ALJ further found that Brockinton, born on August 1, 1969, was 50 years old, which is defined as closely approaching advanced age, and that she has at least a high school education. *Id.* at 21 (Findings 7, 8).

The ALJ found that Ms. Brockinton is unable to perform any past relevant work as a retail salesclerk, salesperson, and general hardware. R. Doc. 9, Tr. 20 (Finding 6). The transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules framework supports a finding that Brockinton is "not disabled." *Id.* at 21 (Finding 9).

Therefore, the ALJ found that given Ms. Brockinton's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Brockinton can perform. *Id.* (Finding 10). The ALJ relying on the testimony of a vocational expert, who found that Brockinton would be able to perform the requirements of representative occupations such as silver wrapper, officer helper, and price marker. *Id.* Finally, the ALJ found that Brockinton has not been under a period of disability from October 9, 2019, through March 12, 2020, the date of the decision. *Id.* at 23 (Finding 11).

The Appeals Council denied Brockinton's request for review on September 27, 2022, making the ALJ's determination the final decision of the Commissioner. R. Doc., Tr. 1-5. Brockinton initiated this action challenging that decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) on November 13, 2022. R. Doc. 1.

## III.    Standard of Review

The role of this Court on judicial review under 42 U.S.C. § 405(g) is limited to determining

"whether (1) the final decision is supported by substantial evidence," and (2) whether the Commissioner applied the "proper legal standards to evaluate the evidence." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner] . . . ." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to satisfy his duty to determine that a claim for disability benefits is supported by substantial evidence may constitute grounds for reversal. *See Ripley v. Chater*, 67 F.3d, 552, 555 (5th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley*, 67 F.3d at 555; *Brown*, 192 F.2d at 496 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "must do more than create a suspicion of the existence of the fact to be established," *Hemphill v. Weinberger*, 483 F.2d 1137, 1139 (5th Cir. 1973), but a lack of substantial evidence "will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson*, 864 F.2d at 343-44 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)); *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir.1973); *Hemphill*, 483 F.2d at 1138.

However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. *See Hemphill*, 483 at 1139. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013); *see also Weinberger*, 480 F.2d at 1007.

IV.    <u>Analysis</u>

A.  <u>ALJ's Consideration of Dr. Mancuso's Opinion and State Agency Determination</u>

Brockinton contends that the ALJ erred because she is supposed to consider and explain her reasons for not accepting the opinions of acceptable medical sources.   R. Doc. 10. at 4. Brockinton contends that while the ALJ found the opinion of Dr. Mancuso persuasive, the ALJ "failed to either adopt and include or reject and explain why she rejected the functional limitations Dr. Mancuso's described in her RFC determination."   *Id.* at 5-6.    Brockinton also contends that remand is required because none of the limitations determined by the State agency medical consultants at the initial and reconsideration levels were accepted and included or rejected and explained why they were rejected in her RFC determination.   *Id.* at 7.

The Commissioner contends that the ALJ applied the correct legal standards and substantial evidence supported the ALJ's residual functional capacity determination.   R. Doc. 17 at 4.   The Commissioner contends that the ALJ properly applied the revised regulations for evaluating medical opinion evidence consisting of the medical sources who treated and examined Brockinton.   *Id.* at 5.   The Commissioner contends the ALJ's evaluation of the medical opinions comports with the relevant guidelines because the ALJ "specifically articulated how persuasive she found the opinions and specifically articulated how she came to this finding."   *Id.*

Pursuant to the revised rules for evaluating medical opinions, the ALJ is no longer required to "defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative finding(s).   20 C.F.R. § 404.1520c(a).   Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes

considering the length, purpose, and extent of the treatment relationship, the frequency of

examinations, and the examining relationship; (4) the physician's specialization, and (5) other

factors.    20 C.F.R. § 404.1520c(c).    The most important factors are supportability and

consistency.   *Id.* § 404.1520c(b)(2); *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at

*2 (W.D. Tex. Mar. 27, 2018).    Under the revised guidelines, the ALJ must articulate how

persuasive she finds each of the opinions in the record based on the supportability and consistency

factors.   20 C.F.R. § 404.1520c(b).

The supportability factor evaluates how "relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s)."   20 C.F.R. § 416.920c(c)(1).   In other words, "supportability looks internally to the

bases presented by the medical opinion itself."   *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022

WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022).   "In articulating how they considered the

supportability factor, ALJs may note that the physician's own treatment notes do not support the

physician's opinion, that the physician's opinion stems from a checklist, that the physician did not

consider certain evidence, did not examine the claimant, or did or did not provide a detailed

explanation for [their] opinion."   *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL

4459729, at *4 (E.D. Mo. Sept. 29, 2021) (citations omitted) (collecting sources).

As for Dr. Mancuso, the ALJ found her opinion persuasive that Brockinton "would have

some limitations with performing simple repetitive tasks over two-hour blocks, sustaining effort

at a normal pace over a routine work week, understanding, remembering and following simple

commands and tolerating stress of day-to-day work."   R. Doc. 9, Tr. 19.   The ALJ found that Dr.

Mancuso's finding of limitations with simple tasks over two-hour blocks is supported by her noting

that Brockinton was able to handle some attention, recent memory and concentration tasks but struggling with others. *Id.* The ALJ further noted that Dr. Mancuso's determination that Brockinton's limitations with sustaining effort were supported by her need to restart some tasks or difficulties as tasks continued, such as with spelling or recalling her social security number. *Id.*

The ALJ also found that Brockinton was limited to simple tasks, which was generally supported by findings of some difficulties with recall and recent memory. *Id.* However, the ALJ was less persuaded by Brockinton's ability to handle day-to day stress, which Dr. Mancuso noted as "markedly impaired," because Brockinton had overall good effort with proper grooming, attending well to interview questions, normal insight, and normal judgement. *Id.* The ALJ also noted that Dr. Mancuso indicated Brockinton had "only mild difficulties with social functioning," despite describing her as "down, sad, and anxious. . . . [and] at times as anxious, nervous, depressed, hyperactive, and tearful." *Id.*

Next Brockinton contends that the ALJ failed to consider the consistency factor. Consistency is defined as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5853 (2017). It is an external check that references evidence from other medical and nonmedical sources. *See* 20 CFR § 404.1520c(c)(2). "[C]onsistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Sharon H.*, 2022 WL 3951488, at *3.

Regarding the consistency requirement, the ALJ considered the May 13, 2020, medical records from Terrebonne Clinics noting that Brockinton reported that her antidepressant was not working and that she continued to socially isolate herself. R. Doc. 9, Tr. 287. Likewise, the ALJ

considered records from a May 5, 2020, visit where Brockinton reported that she was on an antidepressant and feeling better with improved sleep. *Id.* at 292. The ALJ referenced medical records indicating that during a follow up medical visit on May 28, 2020, the treating physician described Brockinton as "oriented to person, place, and time" and "appear[ed] well-developed and well-nourished." *Id.* at 391. The physician also noted that Brockinton was cooperative and in no distress. *Id.*; *see also id.* at 376 (noting Brockinton as dressed, oriented but distractable); *id.* at 418 (noting Brockinton as "alert and oriented to person, place and time," her speech as normal, and cooperative behavior).

The ALJ concluded that the residual functional capacity is supported by the treatment notes. The Court finds that the ALJ properly considered the consistency factor and had substantial evidence to discredit Dr. Mancuso's opinion based on contrary evidence in the record.

**B.    ALJ's Consideration of State Agency Medical Consultants Pinkston and Cherry**

Brockinton contends that the ALJ erred regarding the opinions of state agency medical consultants. R. Doc. 10 at 8. Brockinton alleges that none of the limitations found by the state agency medical agency medical consultants were either accepted and included or rejected with an explanation. *Id.*

In opposition, the Commissioner contends that the ALJ considered the prior administrative findings of the state agency medical finding by consultant James Pinkston, DSW, LCSW, and Paul Cherry, PhD. R. Doc. 11 at 8. The Commissioner contends that there is no merit to Brockinton's argument that the ALJ made several significant legal errors in evaluating the medical evidence of record. *Id.*

The ALJ, according to the record, found the opinion of the state consultant, Dr. James

Pinskton at the reconsideration determination unpersuasive, as "they noted Brockinton could sustain attention for up to two-hour blocks of time when performing simple and routine work-related tasks, follow simple work-like procedures, relate to coworkers and supervisors in non-confrontational situations, and would function best in standardized work environments with minimal variation".   R. Doc. 9, Tr. 18. The ALJ further stated that "the state consultant's limitations to limited public and non-confrontational situations for coworkers and supervisors are stated in unclear vocational terms that give this opinion little support."   *Id.* at 18-19.   The ALJ further explained that the limitation to standardized work environment "offers little detail as to what environment" they are referring to and so does not support the opinion very well.   *Id.* at 19.

The ALJ then discussed the opinion of Dr. Paul Cherry, the state consultant at the initial determination, as unpersuasive because "they noted only that [Brockinton] was limited to unskilled work with no physical limitations."   *Id.*   The ALJ noted that this opinion appeared to add additional limitations but lacked clarity as it noted only that Brockinton would be moderately limited in the area with no further explanation to support the opinion.   *Id.*

The ALJ detailed the areas of the state consultant's opinions she found unpersuasive and explained why she also thereafter detailed the aspects of the opinions she found persuasive.   In so doing, the ALJ noted that the limitation to unskilled work in both opinions is generally consistent with indications by the consultative examiner that Brockinton could perform simple tasks, consistent with treatment notes that she could do simple calculations with normal memory, normal thought processes, and normal recall, but appeared distractible with tangential thoughts and limited attention.   *Id.*   The ALJ further noted that the state consultants also found no evidence of a severe physical impairment, despite evidence of Brockinton's continued difficulties with degenerative

9

cervical spine and fibromyalgia, which is inconsistent with the evidence.   *Id.*

The ALJ is ultimately responsible for determining a claimant's RFC.   20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam).   Although the ALJ cannot completely disregard medical testimony in making an RFC determination, *see Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), the ALJ's decision need not mirror a medical opinion. *See Taylor*, 706 F.3d at 602-03; *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *7 (W.D. Tex. Sept. 3, 2021).   Rather, it is the ALJ's duty to interpret the medical evidence along with other relevant evidence to determine a claimant's capacity for work. *Taylor*, 706 F.3d at 603. *See Jones v. Kijakazzi*, 625 F. Supp. 3d 549 (S.D. Ms. 2022).

In her mental RFC assessment, the ALJ concluded Brockinton has (1) a mild limitation in understanding remembering and applying information; (2) moderate limitation in interacting with others; (3) moderately limited in concentrating, persisting or maintaining pace; and (4) moderate limitation as for adapting or managing oneself.   R. Doc. 9, Tr. 16.   The ALJ held that because Brockinton had a residual functional capacity to perform light work.   *Id.* 17.   However, he found that that Brockinton can climb ramps and stairs occasionally, she should never climb ladders, ropes or scaffolds.   *Id.*

The ALJ found that Brockinton should avoid concentrated exposure to extreme heat and extreme cold; avoid concentrated exposure to dust, fumes, gases, odors other pollutants and poor ventilation.   *Id.* The ALJ further held that Brockinton is limited to unskilled work with occasional changes to the work setting; she is limited to occasional work-related decisions; limited to no fast paced production work such as assembly line type work.   *Id.*   The ALJ also held that Brockinton was limited to occasional interaction with the public, coworkers, and supervisors.   *Id.*

The ALJ not only considered Brockinton's testimony but the objective and subjective medical evidence. The fact that the state agency psychologists used a form developed by the SSA does not eliminate the lack of clarity of the words chosen by psychologist determined by the ALJ.

As to the severe physical impairment finding, Brockinton is correct that the ALJ's statement that the state consultants found no severe physical impairment is erroneous.  However, a continued reading of the ALJ's finding is that there was evidence that Brockinton had "continued difficulties with degenerative cervical spine and fibromyalgia."  This was a purported reason why the ALJ was not persuaded by the state agency consultant's finding.  Having determined that the state agency consultant did find that Brockinton had a severe physical impairment and the ALJ wrongly thought that the consultant did not, it is unclear why the ALJ did not accept the limitations finding of that consultant.  The Commissioner further does not address this issue in its brief. Therefore, as to this limited issue, the Court finds that a remand is appropriate to address the error in the interpretation of this evidence and the impact on the ALJ's decision if any.

V.    **Recommendation**

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge be **REVERSED AND REMANDED FOR reconsideration of the state agency consultant's physical limitation finding.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430

(5th Cir. 1996).[1]

New Orleans, Louisiana, this 31st day of August 2023.

                                KAREN WELLS ROBY
                        **UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.